ESTATE OF Robert BAIRD, by its Administratrix Mary BAIRD, Plaintiff,

v.

TEAMSTERS AFFILIATES PENSION PLAN, Board of Trustees of the Teamsters Affiliates Pension Plan, C. Thomas Keegel, John F. Murphy, Lester A. Singer, in their capacity as members of the Board of Trustees, Defendants.

No. CIV.A. 02–1322.

United States District Court, W.D. Pennsylvania.

March 31, 2004.

James T. Carney, Pittsburgh, PA, for Plaintiff.

Joseph J. Pass, Jubelirer, Pass & Intrieri, Pittsburgh, PA, for Defendant.

## MEMORANDUM ORDER

CONTI, District Judge.

Pending before the court are the parties' cross-motions for summary judgment concerning the denial by defendants Teamsters Affiliates Pension Plan (the "plan") and Board of Trustees of the Teamsters Affiliates Pension Plan (the "board" and together with the plan, collectively referred to as "defendants") of a pension claim asserted by the Estate of Robert Baird, by its Administratrix Mary Baird ("plaintiff" or the "estate"). Plaintiff moves for summary judgment (Doc. No.

19) on the issue of liability, advancing the following four reasons why this court should grant summary judgment: (1) the board's action in denying plaintiff's pension claim was arbitrary and capricious and violated the plain language of the pension plan; (2) the plan itself violates the Employment Retirement Income Security Act's ("ERISA") minimum vesting standards, 29 U.S.C. § 1053; (3) the plan violates ERISA's commencement of benefit provision, 29 U.S.C. § 1059, by failing to ensure that pension benefits were paid within sixty days after the close of the plan year in which Baird terminated employment; and (4) the board's failure to advise Baird of the requirement to file an application prior to receiving pension benefits and its failure to issue a revised summary plan description ("SPD") constituted breaches of fiduciary duty and violations of several ERISA provisions. Defendants dispute plaintiff's arguments and filed a cross-motion for summary judgment (Doc. No. 21) asserting that the board's decision should be upheld. The material facts are set forth in a joint stipulation of material facts not in dispute filed by the parties. (See Doc. No. 18). For the reasons discussed below, the court will grant plaintiff's motion for summary judgment with respect to counts 1–4 and will deny defendant's motion. The court need not address counts 5–8 as those matters are rendered moot by the disposition of counts 1–4.

### Background

The International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("Teamsters") established a pension plan on January 1, 1962 in order to help its union members (termed "participants" under the plan) build long-term financial security in contemplation of retirement. Joint Statement of Material Facts Not in Dispute ("J.S."), Ex. 1 at 7.[1]

---

1. In accordance with the Joint Statement of Material Facts Not in Dispute, all page num-

bers relating to exhibits refer to the stamped

Although the principal offices of the plan and board are located in Washington, D.C., the plan covers a number of participants in Western Pennsylvania. J.S. ¶¶ 5–6. The plan is an "employee pension benefit plan" as defined by Section 3(2) of ERISA, 29 U.S.C. § 1002(2), and it is covered by the provisions of Title I of ERISA. *Id.* ¶ 2. The Teamsters established the plan as a defined benefit pension plan funded primarily by contributions from participating employer-affiliates. J.S., Ex. 1 at 10, 53. *Id.*[2] As a defined benefit pension plan, the plan uses a formula to determine retirement benefits based upon the amount of credited service worked by a participant and the participant's earnings. *Id.*, Ex. 1 at 22. The board is the "administrator" of the plan, as that term is defined by 29 U.S.C. § 1002(16)(A)(I) and is entrusted with general administration of the plan. J.S. ¶ 3. The plan is governed by the provisions of a plan document and summary plan description ("SPD"). *Id.* ¶ 7.

Robert Baird was a participant in the plan because he was an elected official (Secretary–Treasurer) of Teamsters Local No. 636. *Id.* ¶ 11. After suffering a heart attack in 1984 and missing work for a period of time, Baird lost his bid for re-election in January 1985. *Id.* ¶ 13. Baird's final date of employment was January 31, 1985. Prior to that date, Baird was categorized as an "Active Member," defined in Section 1.3 of the plan as "a Member who is employed by an Affiliate at the date in question." *Id.*; Ex. 1 at 44.

The parties agree that, as of Baird's retirement date in January 1985, he had reached his "Normal Retirement Date," a term defined under the plan as:

> (o) "Normal Retirement Date" of a Member means the earliest of i. or ii.:
>
> i. the date the Member attains at least age 57, completes at least 15 years of Credited Service and completes at least 5 years of Vesting Service.
>
> ii. the date the Member attains at least age 62 and completes at least either 10 years of membership in the Plan or 10 years of Credited Service and 5 years of Vesting Service.

*Id.* ¶ 14; Ex. 1 at 48. Baird met his Normal Retirement Date under subsection (i) because he had attained the age of 57, he completed over 15 years of credited service, and he had finished more than 5 years of vesting service under the plan. *Id.* ¶ 14. Thus, Baird was entitled to receive a normal retirement benefit under the plan. Section 4.1 of the plan, entitled "Normal Retirement," governs the award of benefits. That section states:

> 4.1–Normal Retirement. An Active Member who retires on his Normal Retirement Date shall receive on the first day of the month coincident with or next following his retirement a normal retirement benefit as provided in Section 5.1. An Active Member's right to his normal retirement benefit is nonforfeitable on the attainment of his Normal Retirement Date, except on reemployment as provided in Section 4.7.

*Id.*; Ex. 1 at 48.

On July 29, 1985, the plan sent Baird a letter advising him that he was eligible for

---

page number in the lower right hand corner of the text.

**2.** The United States Department of Labor defines a "defined benefit pension plan" as a "retirement plan that uses a specific predetermined formula to calculate the amount of an employee's future benefit. In the private sec-tor, defined benefit plans are typically funded exclusively by employer contributions. In the public sector, defined benefit plans often require employee contributions." UNITED STATES DEPARTMENT OF LABOR, BUREAU OF LABOR STATISTICS GLOSSARY (April 1, 2003), *available at* http://www.bls.gov/bls/glossary.htm.

pension benefits; attached to the letter were benefit application forms. *Id* ¶ 16; Ex. 2. When Baird failed to send the application forms to the plan, the plan contacted the offices of Teamsters Local No. 636 in order to confirm that it had Baird's correct address. After receiving confirmation that it did have the correct address, the plan the sent a second letter and application materials to Baird on August 19, 1986. *Id.* ¶ 17; Ex. 3. Six years later, on October 6, 1992, the plan sent a third letter to Baird along with benefit application forms. *Id.* ¶ 18; Ex. 4. The following year, after calling telephone directory to confirm Baird's residential address, the plan sent Baird a fourth and final letter accompanied by benefit application forms. *Id.* ¶ 19; Ex. 5. None of the four correspondences were returned by the United States Postal Service to the plan. *Id.* ¶ 20. Baird never responded to any of the four letters, nor did he fill out an application for pension benefits under the plan prior to his death on March 11, 1998. *Id.* ¶ 21–22.

On March 25, 1998, the plan sent Mary Baird, Robert Baird's wife, a letter informing her that she was entitled to a spousal benefit. The correspondence also contained a checklist and an application packet. *Id.* ¶ 25. Mrs. Baird submitted the benefit application in early June 1998, and the plan approved payment of the benefits on September 15, 1998. *Id.* ¶ 26. In October 1998, Mrs. Baird began receiving a monthly survivor benefit of $442.00 from the plan, and she continues to receive this monthly benefit at the present. *Id.* ¶ 27. Mrs. Baird, however, was puzzled by a sentence in the September 1998 letter sent by the plan that stated: "We regret that your husband was not able to enjoy the retirement benefits provided by this program." *Id.* ¶ 28; Ex. 8. In February 2001, Mrs. Baird's attorney contacted the plan inquiring why Robert Baird never received any pension benefits. *Id.* ¶ 28; Ex. 9. He also requested a copy of the text of the

pension plan and the SPD. The plan responded in a March 27, 2001 letter that Baird had not received benefits because he failed to submit the required paperwork. *Id.* ¶ 29; Ex. 10. The plan also forwarded a booklet to Mrs. Baird's attorney containing a copy of the plan that had been in use since 1984. *Id.* ¶ 41.

On April 23, 2001, Mrs. Baird's attorney responded to the plan's letter with a formal request for the plan to pay Robert Baird's benefits to Mrs. Baird. Attached to that request was a three-page letter written by Mrs. Baird summarizing her husband's health and mental problems following his 1984 heart attack. *Id.* On May 17, 2001, the plan, through its administrative manager, rejected the formal request, advising Mrs. Baird that she was able to appeal that determination to the board. *Id.* ¶ 31; Ex. 12. The plan relied upon section 8.5 of the plan, which stated:

> 8.5–Applications and Misrepresentations. Benefits under this Plan are payable only upon the filing of an application in writing with the Trustees at the Plan's administrative office in the form and manner prescribed by the Trustees. Any material misrepresentations by the applicant upon which the Trustees relied in approving a benefit or portion of a benefit which the applicant was not entitled to receive under the Plan shall constitute grounds for the denial of such benefit or the portion of such benefit for the applicant and for the cancellation or recovery of such benefit or portion thereof.

*Id.;* Ex. 1 at 55.

Mrs. Baird appealed the decision to the board on July 13, 2001, enclosing all previous correspondences from the plan to her and her husband, along with three new pieces of correspondence for the board's consideration. *Id.* ¶ 31; Ex. 13. At a September 11, 2001 hearing, the board

denied Mrs. Baird's appeal. *Id.* ¶ 33. Both parties stipulate that, pursuant to section 4.1, the plan makes retroactive benefit payments to living participants who apply for benefits after their retirement date. *Id.* ¶ 35. The parties further stipulate that the survivor benefits being received by Mrs. Baird are half of the pension benefits she would be receiving with a 50% joint and survivor annuity in effect had the board granted her appeal. *Id.* ¶ 44. The SPD has not been amended since a "Summary of Material Modifications to the Teamster Affiliates Pension Plan" was added on July 27, 1985, and 10 similar summaries have been created (the latest on July 31, 1996) during the relevant period at issue without an amendment to the SPD. Ex. 1 at 61.

### Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 249, 106 S.Ct. 2505.

### Discussion

**A. The language of the plan grants the board discretionary authority to determine eligibility for benefits and, thus, an "arbitrary and capricious" standard of review is appropriate. (Counts 1–4).**

The first step in determining the merits of the parties' cross-motions for summary judgment is determining what standard of review governs the plan's denial of benefits. In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the United States Supreme Court held that courts must review a denial of ERISA benefits under a *de novo* standard of review unless the "benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case courts are to apply an arbitrary and capricious standard of review. *See also Romero v. SmithKline Beecham*, 309 F.3d 113, 118 (3d Cir.2002). A preliminary issue in this case is whether the language of the plan gives the board discretionary authority.

Plaintiff argues that language in the SPD that states "The Trustees...have the authority to make all final decisions with respect to questions, interpretations, the proper application of any plan provisions and applications for benefits" does not grant the board "discretionary" authority to interpret and apply the rules of the plan because the language in the SPD does not specifically include the word "discretion." [3] The court disagrees with this narrow reading of what constitutes "discretion" under *Bruch*. In that case, the Supreme Court determined that the plan in question did not provide the plan administrator with discretion because "there is

**3.** The term "discretion" is defined as "[f]reedom to act or judge on one's own." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 532 (3d ed.1992).

no evidence that under Firestone's termination pay plan the administrator has the power to construe uncertain terms or that eligibility determinations are to be given deference." *Bruch,* 489 U.S. at 111, 109 S.Ct. 948. In contrast, the language in the SPD in this case, which grants the board the final authority to determine the proper interpretation and application of the plan, constitutes the essence of "discretionary authority." This authority is also found in Section 8.1(b) of the plan, which declares that the board has final authority to promulgate rules and regulations and to make decisions and interpretations regarding benefits.[4] Furthermore, the United States Court of Appeals for the Third Circuit interpreted similar language that did not specifically contain the word "discretion" as giving the plan administrator discretion in making eligibility determinations. *Stoetzner v. U.S. Steel Corporation,* 897 F.2d 115, 119 (3d Cir.1990).[5] Therefore, the court determines that the board had discretionary authority under the plan to make eligibility determinations and that an "arbitrary and capricious" standard of review is appropriate.

■ Under the "arbitrary and capricious" standard, the United States Court of Appeals for the Third Circuit held that:

An administrator's decision will only be overturned if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law … the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits."

*Pinto v. Reliance Standard Life Insurance Co.,* 214 F.3d 377, 387 (3d Cir.2000). Stated in other words, a board's interpretation of its pension plan "is entitled to deference under the arbitrary and capricious standard, unless it is contrary to the plain language of the plan." *Skretvedt v. E.I. DuPont de Nemours and Co.,* 268 F.3d 167 (3d Cir.2001).

■ Particularly with respect to reviewing a board's discretionary interpretation of its own ERISA plan, an analytical framework developed to guide courts in determining whether the board's decision was arbitrary and capricious. The first step in the analysis is to determine whether the terms of the plan documents in dispute are ambiguous. *Bill Gray Enterprises, Incorporated Employee Health and Welfare Plan v. Gourley,* 248 F.3d 206, 218 (3d Cir.2001). The determination whether an ERISA plan provision is ambiguous is a

---

**4.** Section 8.1(b) of the plan states: "All rules, regulations, decisions and interpretations adopted by the Trustees shall be binding upon all parties dealing with the Trust Fund and all persons claiming benefits hereunder." J.S. Ex. 1 at 54.

**5.** The language that the United States Court of Appeals for the Third Circuit found discretionary in that case was:

*Administration*

7.1 (a) The Pennsylvania Corporation shall administer these Pension Rules and shall decide all questions arising out of and relating to the administration of these Pension Rules.

     *     *     *     *     *     *

*Construction*

7.7 The Rules shall be construed and enforced according to the laws of the Commonwealth of Pennsylvania, and all provisions hereof shall be administered according to the laws of said Commonwealth. The decisions of the Pennsylvania Corporation shall be final and conclusive as to all questions of interpretation and application of these Pension Rules and as to all other matters arising in the administration thereof.

*Stoetzner,* 897 F.2d at 119 n. 4.

595

question of law. *See International Union v. Mack Trucks, Inc.,* 917 F.2d 107, 111 (3d Cir.1990). If the court determines that the specific language at issue is unambiguous, "then any actions taken by the plan administrator inconsistent with the terms of the document are arbitrary." *Id.* Actions are not arbitrary if they are "reasonably consistent" with the unambiguous language of the plan. *Id.* If the court determines that the specific plan language at issue is ambiguous, however, "it must take the additional step and analyze whether the plan administrator's interpretation of the document is reasonable." *Id.*

■ An additional consideration to explore in determining whether a denial of benefits was arbitrary and capricious is whether the board read implied additional terms or standards into the plan. In *Epright v. Environmental Resources Management, Inc. Health and Welfare Plan,* 81 F.3d 335, 343 (3d Cir.1996), the United States Court of Appeals for the Third Circuit held that trustees of a pension plan acted arbitrarily when the trustees imposed standards into the plan not required by language of the plan itself. In that case, the defendant imposed into the plan's language a standard that was essentially an amendment to the plan not yet incorporated into the plan document. *Id.* The court determined that by "imposing a requirement which is extrinsic to the Plan, [the defendant] has acted arbitrarily and capriciously." *Id.* The court refuted the defendant's contention that the plan had a reasonable basis for imposing the unwritten standard, determining that the trustees' arbitrary decision "controverted the plain language of the plan." *Id.* at 345. *See also Canseco v. Construction Laborers Pension Trust for Southern California,* 93 F.3d 600, 608 (9th Cir.1996).

**B. The board's denial of plaintiff's claim for normal retirement benefits was arbitrary and capricious in that the demand violated the plain language of the plan and 29 U.S.C. § 1053(a).**

■ Under the "arbitrary and capricious" standard which governs this court's resolution of the case, the court is required to examine the plain language of the plan in order to determine whether the board's interpretation was "arbitrary and capricious." Both parties agree that the resolution of this case depends primarily upon the board's interpretation of two plan provisions: sections 4.1 and 8.5. As noted above, section 4.1, which governs the award of normal retirement benefits, states:

4.1–Normal Retirement. An Active Member who retires on his Normal Retirement Date *shall* receive on the first day of the month coincident with or next following his retirement a normal retirement benefit as provided in Section 5.1. An Active Member's right to his normal retirement benefit is *nonforfeitable on the attainment of his Normal Retirement Date,* except on reemployment as provided in Section 4.7.

J.S., Ex. 1 at 48 (emphasis added). Section 8.5, covering the application procedure, provides the following:

Section 8.5–Applications and Misrepresentations. Benefits under this Plan are payable only upon the filing of an application in writing with the Trustees at the Plan's administrative office in the form and manner prescribed by the Trustees. Any material misrepresentations by the applicant upon which the Trustees relied in approving a benefit or portion of a benefit which the applicant was not entitled to receive under the Plan shall constitute grounds for the denial of such benefit or the portion of

such benefit for the applicant and for the cancellation or recovery of such benefit or portion thereof.

*Id.* p. 55.

The board argues that it reasonably interpreted these provisions in conjunction with each other to mean that a participant will not be paid any benefits until his application for those benefits is filed. According to the board's interpretation, a participant must apply for benefits in order to receive his normal retirement benefit. The board acknowledges that section 4.1 appears to suggest normal retirement benefits must be paid automatically commensurate with the participant's retirement and that the plan makes retroactive benefit payments to living participants who apply for benefits after their retirement date; however, the board interprets the plan to have the additional substantive requirement that an application must be filed while a participant is living in order to receive those benefits.[6]

In advancing this argument, defendants contend that another provision, section 6.1, must be considered as well. Section 6.1, which addresses when payments are to be made under the plan, states:

> 6.1—Payment Period. *Except as otherwise specifically provided in Articles 4 and 5 and Section 8.5*, all benefits shall be payable monthly, commencing as of the first day of the month coincident or next following...

*Id.* p. 53. That section conditions the payment of benefits on (1) a participant becoming eligible for benefits (Article 4); (2) the benefits being correctly computed (Article 5); and (3) the participant filing an application with the trustees (section 8.5). The board essentially argues that because benefits cannot be paid out under section 6.1 unless eligibility requirements under article 4 are met *and* an application is filed pursuant to section 8.5, the three sections must be read and interpreted together in order to actually commence benefit payments. The net effect under the board's interpretation, thus, is that the phrase "Except as otherwise specifically provided in Articles 4 and 5 and Section 8.5" is necessarily read into section 4.1. Finding that this interpretation flies in the face of the unambiguous plain language of the plan, this court cannot accept this interpretation as reasonable; instead, the court finds that the board arbitrarily interpreted the language of the plan by imposing standards into the plan not contained in the language of the plan itself.

The language of section 4.1 is unambiguous, and it mandates, by using the word "shall," that normal retirement benefits are to be paid "on the first day of the month coincident with or next following his retirement a normal retirement benefit." The second sentence of the definition states that this right is "nonforfeitable on the attainment of his Normal Retirement Date."[7] Section 4.1 determines eligibility for benefits. Nowhere in this definition controlling eligibility under the plan is there the substantive requirement that *eligibility,* as opposed to the *payment of benefits* under section 6.1, is conditioned upon an application. In fact, the mandatory language of section 4.1 provides that the *only* condition of eligibility under the plan is reaching the "Normal Retirement Date."

---

**6.** Specifically, defendants argue: "[A]lthough Section 4.1 establishes a participant's eligibility and entitlement to receive normal retirement benefits, the Plan nevertheless requires that an application for those benefits first be filed to satisfy Section 8.5 before making any benefit payment." Brief in Support of Defendant's Motion for Summary Judgment, p. 10 (Doc. No. 22).

**7.** As stated above, both parties agree that Mr. Baird had attained his Normal Retirement Date.

This reading of section 4.1 is strengthened by the plain meaning of sections 6.1 and 8.5. Section 6.1 conditions the payment of benefits upon eligibility and the filing of an application under section 8.5. The plain meaning of section 8.5 is that benefits can only be paid when an application is filed with the trustees. Section 8.5 makes no mention of the requirement than an application must be filed in order for a participant to become *eligible* to receive benefits under the plan; the plain language only suggests that section 8.5 contains a procedural requirement that an application be filed prior to *receiving benefits* in connection with the mandate of section 6.1. *See Canseco v. Construction Laborers Pension Trust for Southern California*, 93 F.3d 600 (9th Cir.1996); *Cotter v. Eastern Conference of Teamsters Retirement Plan*, 898 F.2d 424 (4th Cir. 1990); *Dobson v. Hartford Financial Services*, 196 F.Supp.2d 152, 160 (D.Conn. 2002).

Defendants' interpretation of the plan is further troubling because it conflicts with ERISA's statutorily-prescribed policy against forfeiture of vested retirement benefits. Pursuant to 29 U.S.C. § 1053(a), employee pension plans "shall provide that an employee's right to his normal retirement benefit is *nonforfeitable* upon the attainment of normal retirement age." Although defendants correctly note that there are some exceptions to this rule, *see Geib v. New York State Teamsters Conference Pension*, 758 F.2d 973, 975 (3d Cir. 1985), and that a plan's refusal to pay accrued benefits to a participant because the participant died does not constitute a forfeiture pursuant to 29 U.S.C. § 1053(a)(3)(A),[8] defendants fail to point out any language within the plan that provides for this exception. As stated above, the mandatory language of section 4.1 does not place any conditions upon determining eligibility under the plan. Furthermore, the requirement that participants who fail to apply for benefits prior to death forfeit those benefits is found nowhere in the plain language of the sections at issue. In essence, defendants have engaged in an impermissible attempt to write an extrinsic, arbitrary standard into the plan. The board's actions are unreasonable and arbitrary, and are in clear violation of section 29 U.S.C. § 1053(a). *Epright*, 81 F.3d at 343.

Defendants attempt to save their interpretation of the plan provisions by arguing that they have never made an exception to their interpretation that section 8.5 requires an application be filed in order for a participant to become eligible for benefits. *See* J.S., Exs. 12, 14. Because the court determined that sections 4.1, 6.1, and 8.5 are unambiguous, extrinsic evidence as to how defendants consistently interpreted these sections will not be considered. *See Epright*, 81 F.3d at 340. Furthermore, defendants' consistent misinterpretation of its policy provisions "does not mean that such misinterpretation should be deemed part of the Plan and sanctioned as lawful." *Id.*

Defendants additionally argue that section 5.3 of the plan establishes that Mr. Baird was only entitled to primary benefits during his life. Section 5.3 provides:

> 5.3–Joint and Survivor Benefits. The Joint and Survivor Benefit shall be 88%

---

**8.** 29 U.S.C. § 1053(a)(3)(A) provides:

> A right to an accrued benefit derived from employer contributions shall not be treated as forfeitable solely *because the plan provides* that it is not payable if the participant dies (except in the case of a survivor annui-

ty which is payable as provided in Section 205).

(emphasis added). In this case, there is nothing in the plan that provides that Mr. Baird's right to his pension benefit would be treated as forfeitable if he died prior to applying for benefits.

of the benefit otherwise payable to a Member, payable monthly *during the life of a Member* and 1/2 of 88% of the benefit, payable monthly during the life of his spouse if she survives him. This 88% shall be decreased by 1/2 % for each full year by which the spouse is younger than the Member, or increased by 1/2 % for each full year (up to 10 years) by which the spouse is older than the Member....

(Emphasis added). Nothing in that section, however, precludes plaintiff from filing an application in order to receive benefits under the 50% joint and survivor annuity provided for under section 5.3. That section merely defines the computation of the joint and survivor benefit, drawing a distinction between the amount of the benefit a participant will receive during his life, and the amount that his spouse will receive following his death. There is absolutely no language in the section that precludes the spouse of a participant from filing an application for benefits after the participant's death in order to receive the "1/2 of 88% of the benefit" provided for under this section. As stated above, section 6.1 requires articles 4 and 5 and section 8.5 to be complied with before benefits are paid out; however, section 5.3, standing alone, imposes no requirement that primary benefits can only be paid if the participant files an application while he is alive.

After considering the unambiguous plain language of the plan provisions at issue, the court determines that defendants' denial of plaintiff's claim for normal retirement benefits was arbitrary and capricious, violating both the plain language of the plan and ERISA's nonforfeiture of benefits requirements pursuant to 29 U.S.C. § 1053(a).

## C. Plaintiff's action is not untimely pursuant to section 8.6(d) of the plan.

■ Defendants argue that plaintiff's action is untimely pursuant to section 8.6(d) of the plan, which states in relevant part:

In the event the claimant chooses to seek a review of the original Trustee decision, said claimant must *within 60 days* of the receipt of the notification submit to the Trustees by certified or registered mail a request for a review together with all relevant information in support of said claimant's position.

J.S., Ex. 1 at 56 (emphasis added). Defendants contend that Mrs. Baird was notified in a letter dated September 15, 1998 that none of the unpaid benefits due Mr. Baird prior to his death would be paid to her. The court fails to see how the September 15, 1998 letter qualifies as a final Trustee decision, since no application was made to the plan at that time. That letter cannot qualify as a final decision because it did not comply with 29 U.S.C. § 1133(1), which requires employee benefit plans to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan is being denied, *setting forth the specific reasons for such denial.*" (Emphasis added). Department of Labor regulations implementing 29 U.S.C. § 1133(1) provide that written notice of an adverse benefit determination shall contain, in part, "in a manner calculated to be understood by the claimant (i) The specific reason or reasons for the adverse determination; (ii) Reference to the specific plan provisions on which the determination is based." 29 CFR 2560.503–1(g)(1). The sentence "We regret that your husband was not able to enjoy the retirement benefits provided by this program" provides no reason why Mrs. Baird could not receive her husband's benefits,

599

nor does it reference in any way the specific reason why benefits would be denied. The plan treated Mrs. Baird's April 23, 2001 letter as a claim, which it denied in letter form on May 17, 2001. Mrs. Baird submitted an appeal to the board on July 13, 2001 within the 60–day period proscribed by section 8.6(d). The court concludes that this appeal was timely and plaintiff complied with the procedures under the plan.

### *Conclusion*

**AND NOW**, this 31st day of March 2004, upon consideration of the cross-motions for summary judgment by plaintiff Estate of Robert Baird (Doc. No. 19) and by defendants Teamsters Affiliates Pension Plan and Teamsters Affiliates Pension Plan (Doc. No. 21), **IT IS ORDERED** that plaintiffs's motion is **GRANTED** and defendants' motion is **DENIED** with respect to counts 1–4. With respect to the remaining counts, the court need not address those matters in light of the grant of summary judgment as to counts 1–4 in favor of plaintiff.

In accordance with this ruling, **JUDGMENT** is hereby **ENTERED** against defendants and in favor of plaintiff. Defendant is ordered to pay plaintiff's estate the full amount of retroactive normal plan benefits due under the plan along with prejudgment interest at the applicable T-bill rate, costs, and attorneys' fees.

The clerk shall mark this case closed.