**Charles NORRIS, Plaintiff,**

v.

**FORD MOTOR COMPANY,
et al., Defendants.**

No. 04–70330.

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 21, 2004.

Theodore R. Opperwall, Kienbaum, Opperwall, Birmingham, MI, for defendant.

Michael L. Pitt, Beth M. Rivers, Pitt, Dowty, Royal Oak, MI, for plaintiff.

## ORDER ACCEPTING IN PART AND REJECTING IN PART MAGISTRATE JUDGE'S SEPTEMBER 28, 2004 REPORT AND RECOMMENDATION

EDMUNDS, District Judge.

This matter comes before the Court on the Magistrate Judge's September 28, 2004 Report and Recommendation. Being fully advised in the premises and having reviewed the record and the pleadings, including Defendants' Objections, the Court ACCEPTS IN PART AND REJECTS IN PART the Magistrate Judge's September 28, 2004 Report and Recommendation.

The Court has considered Defendants' Objections. It concludes that Defendants' second Objection requires a partial rejection of the Magistrate Judge's recommendation. The Magistrate recommended that Defendants be ordered to pay to Plaintiff the amount of retroactive disability benefits owed for the period of July 31, 1995 through January 1, 2003. As both Plaintiff and Defendants' point out, the Plan provides that disability retirement benefits are not payable for five months after the onset of Plaintiff's disability. Accordingly, retroactive disability benefits cannot begin until that five month period expires.

Defendants' first, third, and fourth Objections are rejected. The first Objection concerns minor factual misstatements that were not relevant to the Magistrate's Report and Recommendation. The third and fourth Objections ignore that, before the umpire's October 16, 2002 decision, Plaintiff was not "in employment" and thus was not allowed under the Plan to file a disability retirement application. (R. & R. at 5.)

Defendants' fifth through eighth Objections challenge the Magistrate's determination that, under the plain language of the Plan, filing an application for benefits is not a condition for determining eligibility for disability retirement benefits. Defendants' objections are rejected. As the Magistrate correctly concluded, "While it is true that a plan administrator would have no occasion to consider whether an employee is eligible for benefits until he files an application, the actual filing of the application does not change [the fact] whether the employee meets the eligibility requirements." (R. & R. at 7.)

Contrary to Defendants' Objections, a substantial body of relevant case law supports the Magistrate's analysis and conclusions. *See Clarke v. Ford Motor Co.*, 343 F.Supp.2d 714, 722–23 (E.D.Wis.2004) (holding that an employee was entitled to recover retroactive benefits from his retirement date, rejecting arguments similar to those raised by Ford here with regard to similar Plan language, and citing with approval the decisions Plaintiff relied on here; i.e., *Canseco v. Construction Laborers Pension Trust for S. Cal.*, 93 F.3d 600 (9th Cir.1996), *Cotter v. E. Conf. of Teamsters Retirement Plan*, 898 F.2d 424 (4th Cir.1990), *Baird v. Teamsters Affiliates*

*Pension Plan,* 317 F.Supp.2d 588 (W.D.Pa. 2004), and *Dudek v. Midwest Operating Eng'rs Pension Trust Plan,* No. 02–C–1079, 2003 WL 22757746 (N.D.Ill. Nov.20, 2003)).

Defendants further argue, in Objections Nos. 9 through 12, that the Magistrate ignored that the Plan Administrator never had an occasion to assess Plaintiff's eligibility for disability retirement benefits prior to his filing an application and never received any evidence concerning Plaintiff's medical condition. Defendants' Objections are REJECTED IN PART and ACCEPTED IN PART.

The Plan defines an employee as "totally and permanently disabled" if: (1) "he is not engaged in regular employment or occupation for remuneration or profit"; and (2) "if the Board shall find, on the basis of medical evidence, for applications made . . ." that (a) "that he is totally disabled by bodily injury or disease so as to be prevented thereby from engaging in any regular occupation or employment with the Company at the plant or plants where he has seniority" and (b) "that such disability will be permanent and continuous during the remainder of his life". (Plan, Art. IV, Sec. 3, at 46.) There is no dispute that Defendants have determined that, as of January 1, 2003, Plaintiff is "totally and permanently disabled" and thus entitled to disability retirement benefits. The question presented here is whether the Magistrate properly concluded that Plaintiff established that he was totally and permanently disabled as of July 31, 1995.

The Magistrate concluded that (1) in light of the umpire's finding that Plaintiff was unable to work at Defendant Ford Motor Company after July 31, 1995, and (2) the Plan's mandate under Article VII, Section 3, that the Board accept as final any matter arising under a Collective Bargaining Agreement that may become material in its administration of the Plan, Plaintiff had established that he was unable to work at Ford from July 31, 1995 up to the time he filed his application for benefits. (R. & R. at 9–12.) The umpire's determination that Plaintiff was physically unable to work at Ford after July 31, 1995, is a material factor in this ERISA dispute. Accepting, as Defendants must, the umpire's finding that Plaintiff was unable to work at Ford after July 31, 1995, the Magistrate correctly concluded that the second prong of the Plan's definition of "totally and permanently disabled" is established. Defendants correctly note, however, that the first prong of the Plan's definition of a total and permanent disability was not addressed.

There is no evidence that the umpire, the Plan Administrator, or the Appeal Board considered this first prong; i.e., whether Plaintiff was engaged in regular employment or occupation for remuneration or profit since July 31, 1995. In light of Plaintiff's application for worker's compensation benefits and social security disability benefits, it is unlikely that he had. Nonetheless, because application of the definition of "total and permanent disability" requires additional fact finding, a remand is required. On remand, the only matter to be addressed by the Plan Administrator is whether Plaintiff engaged in regular employment or occupation for remuneration or profit after July 31, 1995. Such finding shall be made within 60 days from the date of this Order.

## REPORT AND RECOMMENDATION

MAJZOUB, United States Magistrate Judge.

***RECOMMENDATION:*** This Court recommends that Plaintiff's Motion To Reverse the Decision of the Ford UAW Retirement Plan Administrator Denying Plaintiff's Claim for Retroactive Disability Benefits be GRANTED and Defendant's

Motion to Affirm ERISA Plan Administrator's Decision be DENIED.

\*　　\*　　\*　　\*　　\*　　\*

Plaintiff filed the instant case pursuant to the Employee Retirement Insurance Security Act (ERISA) claiming that Defendant Ford Motor Company–UAW Retirement Board of Administration ("the Board") improperly denied his claim to disability retirement benefits. On June 15, 2004, Plaintiff filed a Motion to Reverse the Decision of the Ford–UAW Retirement Plan Administrator Denying Plaintiff's Claim for Retroactive Disability Benefits. On that same day, Defendant filed a Motion To Affirm ERISA Plan Administrator's Decision. The parties filed their respective responses to the motions and the matter has been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). On July 20, 2004, Plaintiff filed a Supplemental Brief in support of his claim to which Defendant filed a response on August 12, 2004. The parties presented oral arguments on September 14, 2004. The facts underlying Plaintiff's claim are as follows.

Plaintiff was employed by Defendant Ford Motor Company ("Ford") as an hourly employee since 1972. On June 9, 1995, Plaintiff suffered a work-related injury for which Plaintiff was placed on medical leave. On July 31, 1995, Plaintiff was terminated from his employment by Ford for allegedly failing to provide medical documentation substantiating his need for a medical leave. Plaintiff challenged his termination through the administrative grievance process as established under the collective bargaining agreement ("CBA") entered into between Ford and Plaintiff's collective bargaining agent, the United Auto Workers. Plaintiff's case proceeded before an arbitrator who subsequently decided on October 16, 2002 that Plaintiff

had been wrongfully terminated in 1995. The Umpire also found that:

> Since the evidence presented in this case reveals that the Aggrieved was not able to return to work after his conditional medical leave expired on July 31, 1995, he is not entitled to any award of back pay.

(Joint Appendix to Cross–Motions, Tab 3, Umpire decision dated October 16, 2002). On December 31, 2002, Plaintiff filed with Ford an application for disability retirement benefits seeking benefits as of his disability date of June 9, 1995. In a letter dated July 25, 2003, the Ford—UAW Retirement Plan Administrator ("Plan Administrator") indicated that

> [the plan] does not allow us to retro [Plaintiff's] monthly pension benefit back to July 31, 1995. Under the Ford—UAW Retirement Plan, you must make application and the soonest the benefit would commence for a non-Disability retirement would be the first of the month after application. If the retirement type is a Disability Retirement, the plan rules are that payment of a Disability Retirement cannot commence any sooner than the first of the 6th month after the last day worked and proper application is made to the board.

(Joint Appendix, Tab 6, Letter from Plan Administrator). On September 17, 2003, Plaintiff's counsel sent his response to the Plan Administrator's letter asserting that Plaintiff was entitled to disability benefits retroactive to June 9, 1995 (Joint Appendix, Tab 7). In a letter dated October 2, 2003, the Board affirmed the Plan Administrator's decision to deny Plaintiff's request for retroactive disability benefits. Specifically, the Board concluded:

> Under the terms of the Plan, Article V, Section 3, Disability Retirement Benefits it states that the retirement effective date is the first of the month following

the month the participant made retirement application. According to our records Mr. Norris requested retirement benefits on December 31, 2002, therefore making his retirement effective date being for January 1, 2003. The Board Members cannot change or alter the terms of the Plan.

(Joint Appendix, Tab 10). On January 29, 2004, Plaintiff filed this complaint pursuant Section 502(a) of ERISA seeking judicial review of the Plan Administrator's denial of disability benefits retroactive to June 9, 1995.

## APPLICABLE LAW

■ If a retirement plan gives the plan administrator discretionary authority to determine eligibility for benefits and to construe the terms of the plan, the plan administrator's decision to grant or deny benefits is subject to an "arbitrary and capricious" standard of review. *Wilkins v. Baptist Healthcare Sys. Inc.*, 150 F.3d 609, 613 (6th Cir.1998). Here, the parties agree that Defendant's Plan ("Plan") provided discretionary authority to the Plan Administrator such that the arbitrary and capricious standard applies. A plan administrator's decision on eligibility of benefits is not arbitrary and capricious "if they are 'rational in light of the plan's provisions.'" *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir.1996)(quoting *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991)). When applying this standard, the court should take "into account the entire record before the administrator at the time of the determination that [the plaintiff] was not entitled [to the requested benefits]." *Daniel v. Eaton Corp.*, 839 F.2d 263, 268 (6th Cir.1988). In determining plan eligibility, the plan administrator must adhere to the plain meaning of its language and a decision relating to benefit eligibility must be based on a reasonable interpretation of the plan. *Shelby County*

*Health Care Corp. v. Southern Council of Industrial Workers Health and Welfare Trust Fund*, 203 F.3d 926 (6th Cir.2000). Simply stated, a plan administrator's determination of eligibility must be "rational in light of the Plan's provisions." *Brooks v. General Motors Corp.*, 203 F.Supp.2d 818 (E.D.Mich.2002).

## DISCUSSION AND ANALYSIS

■ In this case, the parties agree that Plaintiff was eligible to collect disability retirement benefits beginning on January 1, 2003. The question, however, is whether Plaintiff was entitled to a retroactive period of disability benefits from July 31, 1995 through January 1, 2003. Defendant contends that under the Plan, Plaintiff's benefits were to be paid "the month after application is made, and it is undisputed that Plaintiff did not apply for retirement until December 31, 2002." (Defendant's Brief in support of Motion to Affirm, pg. 2). The provision of the Plan relied on by Defendants as to the trigger date for Plaintiff's benefits is Article V, Sec. 3 which provides:

> The monthly disability retirement benefit payable from the Pension Fund shall become payable to the retired employee, if he then shall be living, on the first day of the first month after (I) he shall have filed an application for such benefit with the Board, and (ii) his disability retirement shall have commenced, and (iii) at least 26 weeks (5 months for retirement on or after October 1, 1979) shall have elapsed since the date upon which his disability commenced, and shall be payable on the first day of each month thereafter . . .

(Joint Appendix, Tab 1, pg. 70). Based on this provision, Defendant argues that Plaintiff was not entitled to begin collecting disability benefits until he filed an application indicating his intent to retire.

Here, Plaintiff did not file an application for benefits until December 31, 2002. Defendant maintains that Plaintiff should have properly filed an application for benefits in 1995 if, at that time, it was his intent to retire and begin collecting benefits. Plaintiff correctly points out, however, that exercising his option to retire and collect benefits in 1995 was made impossible by his termination.

Under Article IV, Section 4 of the Plan, "in order to retire under the Plan, a person must have been in employment in the contract unit at the time of his/her retirement (with certain exceptions not applicable here)." Plaintiff contends that he could not have exercised his option to retire in 1995 because he was no longer in the employ of Defendant. Defendant responds that although terminated from his employment, Plaintiff was constructively employed based upon his formal challenge of his termination through the internal grievance process. This argument, although perhaps appropriate in certain contexts, is not applicable here. The Plan Administrator has no obligation under the Plan to defer to the subjective beliefs of a terminated former employee claiming constructive employment following his termination. Such an argument is wholly inapposite to the strict construction of plan terms mandated under ERISA. *See Morgan v. Mullins,* 643 F.2d 1320, 1321 (8th Cir.1981)(holding that a plan administrator acted arbitrarily by imposing a standard of benefit eligibility not contained in the plan); *Blau v. Del Monte Corp.,* 748 F.2d 1348 (9th Cir.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985)(finding plan administrator acted arbitrarily and capriciously by attempting to impose additional conditions of eligibility above and beyond those required by the terms of the plan). To the extent that Defendant claims that Plaintiff could have filed an application following his termination in 1995, Defendant's argument is wholly irrational and contrary to the plain terms of the Plan.

Having determined that Plaintiff was precluded from filing an application for benefits in 1995, the Court must now consider whether Plaintiff was entitled to retroactive disability benefits from July 31, 1995 through January 1, 2003, based on the application he filed in December 2002. More specifically, the Court must decide whether Defendant's denial of retroactive benefits was arbitrary and capricious under the terms of the Plan. In denying Plaintiff's claim, Defendant relied on Art. V, Sec. 3 (quoted above) under which Defendant asserts an employee is not eligible for disability benefits until he has affirmatively exercised this right by filing an application. However, Article V, Sec. 3 addresses only when benefits shall be paid ("the first day of the month after [filing] an application for such benefit with the Board.") and is silent as to the payment of retroactive benefits. Accordingly, the Court must consider other provisions of the Plan to determine whether Plaintiff was entitled to retroactive benefits.

Relevant to the Court's inquiry is Article IV, Sec. 3 of the Plan which addresses how employees become eligible for disability retirement. Specifically, Art. IV, Sec. 3 provides:

> If the Board shall find that an employee has become totally and permanently disabled ... (ii) after at least 15 years of creditable service, or is so disabled with at least 10 years of creditable service for purposes of retirement ... and (iv) prior to his reaching normal retirement age, such employee thereupon shall be retired for total and permanent disability ..., and shall be eligible for a disability retirement benefit ...

Defendant contends that Plaintiff's total and permanent disability status begins only after Plaintiff files an application for

disability benefits. Defendant further argues that "[i]t was entirely rational and reasonable for the Board to adopt the conventional interpretation [that] no monthly benefit accrues or is paid until you apply" (Defendant's brief in Opposition to Plaintiff's Motion, pg. 6). Defendant fails to recognize the distinction between accrual and payment. Article IV, Sec. 3 outlines the eligibility (accrual) requirements for disability retirement whereas Art. V, Sec. 3 addresses when benefits are to be paid. Defendant contends that an employee's eligibility for benefits is entirely dependent on first filing an application. While it is true that a plan administrator would have no occasion to consider whether an employee is eligible for benefits until he files an application, the actual filing of an application does not change whether the employee meets the eligibility requirements.

Other courts have held in similarly structured plans that the failure to file an application has no bearing on an employee's eligibility. In *Canseco v. Construction Laborers Pension Trust For Southern California*, 93 F.3d 600, 607 (9th Cir.1996), the court held that "[a]lthough an application is required to initiate payment of benefits, it does not follow from this procedural requirement that the failure to apply for payment of benefits entails the complete loss of those benefits retroactively." The *Canseco* plan, although not identical to the present Plan, included provisions describing both the eligibility and application procedure necessary to qualify and initiate the payment of benefits. In *Canseco*, the court relied on the reasoning of *Cotter v. Eastern Conf. of Teamsters Retirement Plan*, 898 F.2d 424 (4th Cir.1990) where the Fourth Circuit was confronted with a similar issue.

In *Cotter*, plaintiff failed to claim retirement benefits at the time he became eligible based on his mistaken belief that he had not yet attained eligibility for such benefits. Eight years later, upon discovering his mistake, Cotter filed an application for the retroactive payment of benefits. The plan administrator denied Cotter's claim reasoning that Cotter had failed to file an application which he alleged was a requirement for receiving benefits under the plan. The Fourth Circuit held that the plan administrator abused his discretion in denying Cotter's claim and concluded that the plan's requirement that a participant file an application to receive benefits was merely administrative and did not prevent the award of benefits for which the participant had attained eligibility. *Cotter*, 898 F.2d at 428. Similarly, the instant Plan distinguishes between qualification or eligibility of benefits and how to initiate payments for those benefits.

Defendant contends, however, that its Plan is distinguishable from the *Canseco* plan. Specifically, Defendant asserts that

Plaintiff is not seeking a retroactive 'normal' retirement benefit to which he would indisputably be eligible ... [but] [i]nstead, Plaintiff is seeking retroactive 'disability retirement' benefits which required him to prove his total and permanent disability ... and to make an election to give up his company seniority, his right to work, and the fringe benefits associated with his seniority .... In that setting, the application requirement has a distinct and essential purpose—it creates a measurement point for the determining of disability and the making of an election. Indeed, the Plan language describing eligibility for disability retirement explicitly mentions filing of an application as a triggering and timing mechanism for determining whether [an] employee is totally and permanently disabled.

Defendant's assertion that the application is a measurement point for determining disability is inaccurate. Unquestionably, many applications for disability are denied

because an employee cannot substantiate a medical condition resulting in total disability. Certainly Defendant does not imply that in each of those instances the application is a measure of anything. Accordingly, the Court rejects Defendant's assertion that "the Plan language describing eligibility for disability retirement explicitly mentions filing of an application as a triggering and timing mechanism for determining whether [an] employee is totally and permanently disabled." As already discussed, the Plan has one provision which sets forth the eligibility requirements for disability retirement benefits and a separate and distinct provision explaining how to initiate the payment of those benefits. The two provisions serve different purposes; one provision describes how to qualify and the other explains when an employee begins to collect those benefits. Defendant's argument that Plaintiff could not be eligible for benefits without first filing an application is contrary to the terms and structure of its Plan.

Next, Plaintiff asserts that if the Plan Administrator had given full faith and credit to the Umpire's decision, the Administrator should have concluded that Plaintiff met the eligibility requirements and approved his request for a period of retroactive disability benefits from July 31, 1995 through January 1, 2003. On October 16, 2002, the Umpire concluded that Plaintiff was wrongfully terminated in 1995 and further concluded that Plaintiff was unable to return to work following his medical leave. In denying Plaintiff's claim, neither the Plan Administrator nor the Board considered, or at least explained, the impact, if any, of the Umpire's decision. Now, Defendant questions whether the Umpire's ruling is particularly applicable to Plaintiff's situation. For the following reasons, the Court concludes that it was irrational for Defendant to fail to consider the Umpire's decision.

Article VII, Sec. 3 of the Plan dictates that the Board

> shall accept as final … (ii) determinations made pursuant to the Collective Bargaining Agreement dated September 28, 1949, or any subsequent Collective Bargaining Agreement, with respect to the seniority of employees, as to breaks in or loss of seniority, and as to any other matter arising under a Collective Bargaining Agreement [CBA] which may become material in its administration of the Plan …

Therefore, whether the Board was bound by the Umpire's conclusion that Plaintiff was unable to return to work turns on whether the Umpire's decision was both pursuant to the CBA and material to the administration of the Plan. Clearly the Umpire's conclusion was made pursuant to the CBA based on Plaintiff's challenge to his termination. Additionally, the Umpire's conclusion that Plaintiff was wrongfully terminated was not only material in the administration of the Plan, but indispensable since the effect of the Umpire's conclusion was to restore Plaintiff's status to that of an employee subject to all of the provisions of the retirement plan including those related to disability retirement benefits.

The Umpire's conclusion established the total disability requirement of Art IV, Sec. 3 of the Plan and was, by its very terms, meant to be applied retroactively. Without the Umpire's conclusion, Plaintiff would not have been able to properly file an application for disability benefits in 2002 at which time he was considered to be "in employment in the contract unit at the time of his retirement." (Art. IV, Sec. 4 of the Plan). Accordingly, the Umpire's determination falls well within the province of Art. VII, Sec. 3 of the Plan and the Umpire's decision was inextricably material to the administration of the Plan as it

related to the restoration of Plaintiff's rights under the Plan. The Plan Administrator was bound under Art. VII, Sec. 3 of the Plan to consider the effect of the Umpire's decision and her failure to the Umpire's ruling was clearly irrational given the plain language of Art. VII, Sec. 3.

Finally, Defendant argues that given the unusual circumstances presented here, the Plan Administrator's decision to deny Plaintiff's claim to retroactive benefits was reasonable under the express terms of the Plan. This Court disagrees. There is nothing unusual or unique about an employee successfully challenging his termination through binding arbitration. Defendant's contention that the Plan Administrator acted reasonably in the absence of an express provision authorizing retroactive benefits is simply without merit. Once a terminated employee is reinstated he is treated as if he were never terminated. Here, the Plan Administrator should have accepted the Umpire's conclusion that Plaintiff was wrongfully terminated and could not have worked past July 31, 1995. Upon filing of an application to initiate disability benefits, the Administrator should have determined eligibility for those benefits. Because the Umpire determined that Plaintiff could not have worked beyond July 31, 1995, it should have been clear to the Administrator that Plaintiff was entitled to disability benefits from that time forward.

Under Defendant's theory, Plaintiff was eligible for benefits starting on January 1, 2003 after he filed an application for disability retirement. Defendant suggests that Plaintiff forfeited his right to disability benefits from July 31, 1995 until January 1, 2003. To accept Defendant's theory would be to totally and completely ignore the effect of the Umpire's decision reversing Plaintiff's termination. Such disregard of the Umpire's decision is completely contrary to the Plan. Therefore, the Plan Administrator's decision to deny Plaintiff's claim to retroactive benefits is arbitrary and capricious.

Now, the Court must decide how to remedy the Plan Administrator's denial of Plaintiff's claim to retroactive disability benefits. Plaintiff asks this Court to reverse the decision of the Plan Administrator and grant him retroactive disability benefits from July 31, 1995 through January 1, 2003. Alternatively, Plaintiff asks this Court to reverse the decision of the Plan Administrator and credit him which additional years of service for his retirement pension. Under the Plan, however, an individual receives service credit only for years actually worked. Here, the Umpire concluded in 2002 that Plaintiff was unable to continue working after July 31, 1995, the date of his disability. Therefore, Plaintiff could neither have worked following his termination nor could he have accrued additional service credit towards his pension. The only remedy appropriate in this situation is to reverse the decision of the Plan Administrator and order Defendant to pay to Plaintiff the amount of retroactive disability benefits from July 31, 1995 through January 1, 2003.

## ATTORNEY FEES

Finally, the Court considers Plaintiff's request for attorney fees, costs, and interests associated with bringing this action. Under Section 502(g) of ERISA, 29 U.S.C. § 1132(g), a plan participant, beneficiary or fiduciary may be awarded attorney fees if he prevails in his suit under § 1132 to enforce his rights under his plan. Awarding of attorney fees is discretionary under the statute. Having failed to support his prayer for attorney fees, the Court declines to entertain Plaintiff's request at this time. Plaintiff may file a motion supported by a brief setting forth his calculation of attorney fees, costs, and interest associated in bringing this action.

*NOTICE TO PARTIES REGARDING OBJECTIONS*

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir.1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n Of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection # 1," "Objection # 2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection # 1," "Response to Objection # 2," etc.

Sept. 28, 2004.